**Statement of Facts**

On August 1, 2026, Metropolitan Police Department ("MPD") Officers McCrea and Letourneau were working the evening tour and operating in full MPD uniform in a marked MPD scout car. At approximately 1:44 p.m., First District ("1D") Officers were dispatched to 949 First Street SE, Washington, D.C, 20003, which is an apartment complex, in reference to a report of a person with a gun. MPD Officers arrived on scene and spoke with the concierge, who was the reporting party. The concierge advised officers on scene that she observed, via CCTV, an unknown Black male ("V1") on the elevator attempting to leave the location get aggressively approached by another unknown Black male with braids wearing a white t-shirt and dark blue work pants with highlighter stripes; this male was later identified through a Washington D.C. identification card as Lavell Dakwan Cyrus ("the Defendant").

The CCTV footage shows the following events. V1 looked down the hallway from the elevator threshold and, seconds later, the Defendant came from the same direction V1 had been looking, approached V1 yelling in an aggressive manner, and racked a black handgun, seemingly to chamber a round. The Defendant then attempted a one-handed grab of V1 but then backed away into the hallway. V1 eventually got off the elevator and left the location.

MPD Officers on scene observed this CCTV footage and were made aware by the concierge that V1 has a child with the girlfriend of the Defendant. The concierge provided the girlfriend's apartment number, and MPD Officers attempted a door knock on the apartment with no response. Given the exigent circumstances, MPD Officers made entry into the apartment and found it was unoccupied. MPD Officers remained at the location to wait for the Defendant's anticipated return. At approximately 3:24 p.m., MPD Officers observed the Defendant, who had a black backpack and was still wearing the same pants that he was observed wearing in the CCTV footage, walking to the apartment unit. The Officers stopped and detained the Defendant without incident and placed him under arrest.

Officers did an inventory search of the Defendant's black backpack and observed a black handgun that was designed to expel a projectile by the action of an explosion. The backpack also contained an off-white in color paste inside a plastic bag a plastic bag, multiple identification cards containing the Defendant's name and photo, his birth certificate, social security card, and pay stubs from his employer. The off-white in color paste was field tested, and that test produced a brown liquid, indicating a positive presence of Amphetamine. A crime scene officer responded to the MPD First District Station to process the firearm, which was revealed to be a Glock 29 10mm handgun with an obliterated serial number and a 15 round capacity magazine that was loaded with 13 rounds of ammunition and no rounds in the chamber.

*Figure 1: Officers locating the firearm in the Defendant's backpack.*



*Figure 2: Officers photographing the firearm found in the Defendant's backpack.*



On August 1, 2026, at approximately 3:30 p.m., Detective Beatty conducted a phone interview with V1. During the interview, V1 reported that he has been experiencing an ongoing custody related conflict with his child's mother ("O1"). V1 stated that he has been attempting to return their daughter to O1 as scheduled, but O1 has been inconsistent with pickup and dropoff arrangements. On August 1, 2026, at approximately 7:00 a.m., V1 contacted O1 via FaceTime regarding retrieving their daughter and a verbal argument ensued. V1 then informed O1 that he would be bringing their daughter to her residence.

V1 stated that he was given a ride to O1's residence for the custody exchange, and upon arrival, V1 entered O1's apartment building and asked the concierge to call O1 so she could come down to retrieve their daughter, which he reported was their usual exchange practice. O1 did not answer the first call, so after several moments the concierge called again. When O1 answered, she instructed the concierge to allow V1 to come up to her unit. V1 and his daughter entered the elevator, and the concierge used her access fob to send him to the appropriate floor. When V1 reached O1's floor, the elevator doors opened and O1 met him. V1 handed O1 their daughter and O1 began walking toward her unit while V1 remained near the elevator. As O1 walked away, V1 reported hearing a door open, close, and then open again. V1 stated that he felt uneasy and began pressing the elevator button repeatedly to return downstairs. At that moment, the Defendant came around the corner holding a firearm and chambered a round. The Defendant made a statement to the effect of, "You tried to fight her," while holding his gun. When the elevator doors opened, V1 entered the elevator and the Defendant attempted to grab V1, but V1 slapped his hand away as the elevator doors closed. Once V1 reached the lobby level, he informed the concierge of what had just occurred. V1 described the Defendant as a Black male with braided hair, a chubby build, wearing construction-style pants with a stripe (possibly a DPW worker). V1 then left the building and returned to the individual that gave him a ride to inform IT of the incident. IT advised him to return to the concierge and have her contact the police. V1 stated that when he returned, the concierge informed him that O1 attempted to report that V1 had committed an act against her (O1). The concierge told V1 that the incident O1 attempted to report did not occur based on what she observed on the video surveillance footage. V1 reported that he departed the location due to O1's false accusations and his fear of being wrongfully arrested. Detective Beatty also conducted an interview with the individual that gave V1 a ride. The individual that gave V1 a ride was not an eyewitness to the incident but corroborated V1's account as it was relayed to IT by V1.

A criminal history review of Defendant Lavell Cyrus's criminal record indicates that the Defendant was previously convicted in the Superior Court for the District of Columbia of one count of Attempted Second-Degree Burglary in case number 2018 CF2 013222, for which he was sentenced to 32 months of incarceration with 32 months suspended. The Defendant was also previously convicted in 2014 CF3 000095 of one count of Robbery and one count of Carry Dangerous Weapon – Felony BB Gun. In count one of 2014 CF3 000095, the Defendant was sentenced to 18 months of incarceration, and in count two he was sentenced to twelve months of incarceration.

There are no firearms or ammunition manufacturers in the District of Columbia. Therefore, the firearm and ammunition in this case would have traveled in interstate commerce before being used in the District of Columbia.

As such, your affiant submits that probable cause exists to charge Lavell CYRUS with a violation of 18 U.S.C. § 922(g)(1) (Unlawful Possession of Firearm and Ammunition By a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year).

_____
Officer Tyus McCrea
Metropolitan Police Department

Subscribed and sworn by telephone pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3) on August 5, 2026.

_____
Honorable G. Michael Harvey
United States Magistrate Judge